779 F.2d 49
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
LEOLA BOND, Plaintiff-Appellant
v.
CITY OF MEMPHIS BOARD OF EDUCATION, Defendant-Apppellee.
 84-5977
 United States Court of Appeals,
Sixth Circuit.
 10/3/85
 
 AFFIRMED
 W.D.Tenn.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE
 BEFORE: KEITH and KRUPANSKY, Circuit Judges; and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff/appellant Leola Bond appeals the judgment for defendant/appellee City of Memphis Board of Education (the Board), following a bench trial, in this Title VII action for sex discrimination.
 
 
 2
 Bond is a female who was employed by the Board as principal of Melrose Junior High School at the end of the 1980-81 school year. At the beginning of the 1981-82 school year, Melrose and nine other schools in the Memphis system were closed. As a result, Bond's specific job assignment was abolished. Pursuant to Board policy, Bond tendered a letter of preference indicating that she desired either a lateral transfer to another junior high principalship or a promotion to a senior high principalship. Bond was subsequently offered reassignment as principal of an elementary school. She refused this assignment, viewing it as a demotion in ?? of status and credibility. After being placed on a list of ?? personnel, Bond was thereafter assigned to Sheffield ?? Center as a classroom teacher, a position she still ??.
 
 
 3
 Bond brought suit in federal district court alleging ?? discrimination. At the bench trial on those charges, Bond attempted to proceed under both a disparate impact and a disparate treatment theory. Bond's theory of disparate impact was that the ?? lack of a clearly defined policy for selecting administrations coupled with the discretion vested in the superintendent ?? substantial adverse impact on women. As support for this ??, Bond introduced statistics reflecting a disparity in the ?? of secondary male and female administrators. Under the ?? treatment analysis, Bond contended that her treatment was different from similarly situated male principals. In particular, Bond sought comparison with William Harden and Charles Woodard, two male administrators who Bond felt had received less favorable evaluations than she had received but who were, nevertheless, assigned to secondary school principalships.
 
 
 4
 The Board argued to the district court that the selection and assignment of principals requires the exercise of discretion by the superintendent, and moreover that while the superintendent does exercise personal judgment in appointing principals, the job ?? expectations for persons assigned to those positions ?? well known and not unduly subjective. The Board adduced ?? from superintendent Willie W. Herenton to the effect ?? while Bond's performance evaluations as a principal were generally satisfactory, there were specific problems with insubordination, vindictiveness against certain teachers and an authorization leadership style which often proved problematic when dealing ?? large and complex faculty. Herenton further testified that the reason Bond was offered an elementary principalship was because ?? felt that it was a smaller, more manageable assignment where Bond's strengths could be more fully utilized. When confronted with the alleged dissimilar treatment between Bond, Harden and Woodard, Herenton reasoned that the males had the capacity to accept constructive criticism and positively respond to it, a quality which Herenton felt Bond sorely lacked. Finally, Herenton testified as to new, post-complaint programs instituted by the Board for the purpose of placing more females in secondary administrative positions.
 
 
 5
 The district court concluded that the discriminatory impact theory was not available to Bond since she was unable to identify a neutral p licy having a substantial adverse impact on women. The district court further reasoned that while Bond had established a prima facie case of disparate treatment, the Board articulated a legitimatenon-discriminatory reason for its action which Bond had failed to show was pretextual. Moreover even ?? the statistical evidence favored Bond, the court concluded that the offer of the elementary principalship was not motivated by intentional discrimination. In response to Bond's allegations that the superintendent's use of his personal judgment was a tool for covert discrimination, the court noted that the expectations for persons seeking or maintaining principalships are well known and not unduly subjective.
 
 
 6
 On appeal, Bond argues that the district court erred by concluding that the disparate impact theory was not available to her since she failed to identify a neutral policy having a substantial adverse impact on women. Bond further charged as error the district court's decision that the Board had articulated a legitimate non-discriminatory reason for its action which Bond failed to show was pretextual.
 
 
 7
 Upon consideration of the briefs and oral arguments of the parties, this court adopts the opinion of the district court and affirms its decision.